1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                          DISTRICT OF NEVADA
8                                  * * *
9    IRIS CONTRERAS, *et al*.,                Case No. 2:12-cv-00249-RFB-VCF
10                   Plaintiffs,
11        v.                                  **ORDER**
12   AMERICAN FAMILY MUTUAL
     INSURANCE COMPANY, *et al*.,             Third-Party Defendant Copart's Motion for
13                                            Summary Judgment (ECF No. 48)
                     Defendants.
14                                            Third-Party Plaintiff American Family's
                                              Counter-Motion for Summary Judgment
15                                            (ECF No. 55)
     AMERICAN FAMILY MUTUAL
16   INSURANCE COMPANY,                       Defendant American Family's Motion for
                                              Summary Judgment on Plaintiffs' Claims
17               Third-Party Plaintiff,       (ECF No. 56)
18        v.
19   COPART, INC.,
20               Third-Party Defendant.
21
22   I.      INTRODUCTION
23           This matter is before the Court on three Motions for Summary Judgment, one filed by
24   Third-Party Defendant Copart, Inc. ("Copart"), ECF No. 48, and the other two by
25   Defendant/Third-Party Plaintiff American Family Mutual Insurance Company ("American
26   Family"), ECF Nos. 55 and 56. This case arises from an automobile accident in 2006 in which
27   Plaintiffs Iris Contreras, Walter M. Deleon, and Walter O. Deleon sustained injuries due to an
28   alleged tire failure that caused the vehicle in which they were riding to swerve across the road and

roll over several times. During ensuing litigation between Plaintiffs, American Family, and the car and tire manufacturers, the allegedly defective tire was lost. Plaintiffs brought this suit against American Family claiming that it was responsible for the loss of the tire and that this loss resulted in the dismissal of Plaintiffs' claim against the manufacturers. American Family impleaded Copart as a Third-Party Defendant, claiming that Copart was the party responsible for the loss of the tire. For the reasons set forth below, all three Motions for Summary Judgment are granted in part and denied in part.

## II.    BACKGROUND

### A.  Undisputed Facts

The Court finds the following facts to be undisputed for the purposes of these motions. These facts are based on the parties' statements of undisputed facts and, where specifically noted, the exhibits submitted by the parties.

On November 6, 2006, Plaintiffs suffered injuries as a result of an automobile accident in California when the right rear tire of the vehicle in which they were riding failed due to an alleged latent defect. As a result of the tire's failure, Plaintiff Walter O. Deleon (the driver of the car) lost control of the car, which caused it to go off the road and flip over several times. Following the accident, American Family (Contreras's insurer) paid Contreras and Walter M. Deleon the limits for bodily injury on Contreras's policy, compensated Contreras for the value of her car, and took possession of and title to the car. Within a few days after the accident, American Family had the vehicle transported to a Copart salvage yard in Colton, California.

American Family and Copart entered into a contract on June 6, 2007. Percentage Incentive Program Agreement, Third-Party Def.'s Mot. Summ. J. Ex. A ("Copart Contract"). In their contract, the parties agreed that "Copart will sell at auction to the highest bidder, all of [American Family's] salvage and recovered theft vehicles." Id. § C.

Section 2.18 of the contract is titled "Safeguard Program." It states as follows:

> The Safeguard Program is Copart's program for any Vehicle that is the subject of litigation . . . or some other matter where it is imperative that the Vehicle not be sold, auctioned, or otherwise disposed of for a period of time.

The Safeguard Program is designed with the sole intent of preventing the sale of certain Vehicles. Either [American Family] or Copart may assign a Vehicle to the Safeguard Program. . . . Vehicles for which Safeguard Program confirmation numbers have been issued by Copart and received by [American Family] shall require a written release . . . from the Safeguard Program, in addition to proper title documents, to authorize Copart to sell the vehicle. Copart assumes no responsibility for any damages and does not act as an evidence holding facility.

American Family and Copart's contract also contained an indemnification clause that reads in relevant part as follows:

Each party . . . agrees to indemnify, defend, and hold harmless the other party . . . from and against any and all losses, liabilities, damages, penalties, and claims and all related costs and expenses . . . related to claims made by third parties against the Indemnified Party that arise out of (i) any dealing between the Indemnifying Party and third parties, (ii) any act or omission by the Indemnifying Party which is contrary to any term of this Agreement, and (iii) any negligent act by the Indemnifying Party.

Id. § 2.21. Finally, the contract contained a section entitled "Limitation of Liability," which states the following:

NEITHER PARTY HEREUNDER SHALL BE LIABLE TO THE OTHER UNDER OR IN CONNECTION WITH THIS AGREEMENT FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE, OR INDIRECT DAMAGES OF ANY NATURE, FOR ANY REASON CLAIMED BY THE OTHER PARTY, EVEN IF THE NON-CLAIMING PARTY HAS BEEN WARNED OF THE POSSIBILITY OF SUCH DAMAGES. Copart's liability for damage to a vehicle in its possession shall be limited to the lesser of (1) the actual cost to repair the damage to such vehicle which is caused by Copart, or (2) the negative impact to the salvage value of such vehicle.

Id. § 2.33.

Around November 29, 2006, American Family requested that the vehicle be placed in the "Safeguard" program at the Copart salvage yard. Pursuant to the terms of the contract between American Family and Copart, vehicles placed in the Safeguard program shall not be sold, auctioned, or otherwise disposed of. Copart Contract § 2.18. Sometime prior to March 2007, American Family authorized that the allegedly defective tire be sent to EFI Global, Inc. ("EFI")

- 3 -

for an analysis of the tire. EFI conducted a tire failure analysis and forensic engineering investigation of the tire, and generated a report dated March 13, 2007 in which it concluded that the tire failed due to a sudden loss of air pressure caused by a manufacturing defect in the tire. EFI sent the tire back to Copart on March 21, 2007. Copart received the tire at its Colton, California facility on March 24, 2007. On April 30, 2007, American Family informed Copart that the tire was being sent back and instructed Copart to place the tire inside the vehicle.

Based on the results of the analysis, Plaintiffs filed product liability complaints against the car manufacturer, tire manufacturer, and car distributor. American Family filed a subrogation claim against the car and tire manufacturers. These suits were consolidated in February 2009. During discovery in American Family's subrogation action, American Family requested that Copart produce the tire, but Copart could not find it. The tire was lost or destroyed while in the care and custody of Copart, resulting in the loss of a key piece of evidence in American Family's and Plaintiffs' claims against the manufacturers. American Family's subrogation action was subsequently dismissed. Judgment was also entered against Plaintiffs after they failed to respond to a pending motion for summary judgment filed against them.

## B.  Procedural History

Plaintiffs' Amended Complaint was filed on February 24, 2012. ECF No. 6. In their Amended Complaint, Plaintiffs allege that as a result of Defendants' failure to preserve evidence, their lawsuits were dismissed and they were unable to recover for their injuries. Plaintiffs state four causes of action against American Family and EFI: (1) negligence, (2) breach of the implied covenant of good faith and fair dealing, (3) breach of contract, and (4) breach of Nevada's Unfair Claims Practices Act, N.R.S. 686A.310. Id. EFI filed an Answer and Third-Party Complaint against Copart on March 12, 2012. ECF No. 7. American Family filed a Motion to Dismiss the Amended Complaint on March 16, 2012, to which EFI joined on March 21, 2012. ECF Nos. 11, 12.  On August 10, 2012, Copart filed a Motion to Dismiss EFI's claim against it. ECF No. 21. On January 24, 2013, the Court denied American Family's Motion to Dismiss and granted Copart's Motion to Dismiss. Order, ECF No. 29.

. . .

On March 1, 2013, American Family filed an Answer to the Amended Complaint and a Third-Party Complaint against Copart. ECF No. 30. In the Third-Party Complaint, American Family asserts that Copart was responsible for the loss or destruction of the tire and that any damage to Plaintiffs was the result of Copart's actions. American Family alleges six causes of action against Copart: (1) breach of contract, (2) negligent bailment, (3) express indemnity, (4) implied indemnity, (5) contribution, and (6) apportionment. Id. On March 11, 2014, the Court granted the parties' stipulation to dismiss Plaintiffs' claims against EFI. Order, ECF No. 52. Discovery closed on January 14, 2014, and the parties filed the dispositive motions now pending before the Court. This Order sets forth the Court's ruling on these motions.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

"In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the

1    nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

2    material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find

3    for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380

4    (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of

5    persuasion on a motion for summary judgment rests with the moving party, who must convince

6    the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

7

8    **IV.    DISCUSSION**

9            The motions before the Court can be divided into two groups. The first group concerns

10   American Family's Third-Party Complaint, on which Copart and American Family have each filed

11   a Motion for Summary Judgment. The second involves Plaintiffs' claims against American Family

12   as asserted in the Amended Complaint, on which American Family has filed a Motion for

13   Summary Judgment. The Court sets forth its ruling on each set of claims below. Before discussing

14   its rulings, however, the Court turns to the issue of authentication of the parties' evidence.

15                   **A.  Authentication of Evidence**

16           "A trial court can only consider admissible evidence in ruling on a motion for summary

17   judgment. Authentication is a 'condition precedent to admissibility,' and this condition is satisfied

18   by 'evidence sufficient to support a finding that the matter in question is what its proponent

19   claims.'" Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted)

20   (quoting Fed. R. Evid. 901(a)). Therefore, a court may not consider unauthenticated documents

21   when deciding a motion for summary judgment. Id.

22           On April 29, 2015, the Court issued a Minute Order notifying the parties that certain

23   exhibits they sought to attach as evidence were not authenticated and therefore inadmissible

24   pursuant to Orr. ECF No. 78. The Court gave the parties an opportunity to submit affidavits or

25   other documents properly authenticating their evidence by May 1, 2015, the date on which the

26   Court heard argument on the motions. Id. Upon review of the declarations and affidavits submitted

27   by the parties, the Court finds that all evidence has been properly authenticated by the parties

28   except as discussed below.

The documents attached as Exhibits 6, 9, 10, and 11 to Plaintiffs' Opposition are not authenticated and are therefore inadmissible. ECF No. 64. Exhibit 6 purports to be American Family's responses to the tire manufacturer's Request for Production of Documents in American Family's previous subrogation action. The document contains a signature below American Family's counsel's name. However, this document lacks foundation because Plaintiffs have failed to provide an affidavit from anyone with personal knowledge of the responses. Orr, 285 F.3d at 777. Moreover, the exhibit is not authenticated by having been produced in discovery in a previous action. Plaintiffs have not identified who produced the responses and no party has admitted to producing them. Id. Exhibits 9 and 10, which purport to be printouts confirming that the subject vehicle was sent to Copart's salvage facility and that the subject tire was received by Copart on May 21, 2007 following EFI's analysis, are not authenticated because Plaintiff has not provided an affidavit of any person who could authenticate these documents pursuant to Rule 901 of the Federal Rules of Evidence, nor are they self-authenticating documents under Rule 902. Id. at 774. Finally, Exhibit 11 purports to be the deposition of Gilbert Murga, Copart's Rule 30(b)(6) designee. Plaintiffs have failed to authenticate the deposition because it is not signed by the court reporter. Orr, 285 F.3d at 775 ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."). Plaintiffs' attempt to authenticate the document through the affidavit of their counsel does not suffice to cure this defect. Id. ("It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the reporter, and the action and stating that the deposition is a 'true and correct copy.'"). Therefore, Exhibits 6, 9, 10, and 11 to Plaintiffs' Opposition are inadmissible and will not be considered.

Similarly, American Family has failed to authenticate the documents attached as Exhibits A, B, C, and I to its Motion for Summary Judgment on Plaintiffs' Claims, ECF No. 56, and the document attached as Exhibit C to its Counter Motion for Summary Judgment on the Third-Party Complaint, ECF No. 55. Exhibits A, B, and C to American Family's Motion for Summary Judgment on Plaintiffs' Claims purport to be excerpts from the depositions of the three individual

1   Plaintiffs in this case. The court reporter's certification is missing from these excerpts. Therefore,

2   for the reasons discussed above, these deposition extracts are inadmissible and the affidavit of

3   American Family's counsel does not cure the authenticity defect. Exhibit I to American Family's

4   Motion for Summary Judgment on Plaintiffs' Claims and Exhibit C to its Counter Motion for

5   Summary Judgment against Copart purport to be the same document: the deposition of Gilbert

6   Murga, Copart's Rule 30(b)(6) designee. These documents are not signed by the court reporter.

7   For the reasons discussed above, the documents are not authenticated and are therefore

8   inadmissible.

9        Finally, Copart also failed to authenticate the document attached as Exhibit C, which

10   purports to be the deposition of American Family's Rule 30(b)(6) designee, to its Motion for

11   Summary Judgment against American Family. ECF No. 48. However, this document was

12   authenticated by Plaintiffs, who attached a copy of the deposition certified by the court reporter as

13   Exhibit 4 to their Opposition to American Family's Motion for Summary Judgment against them.

14   ECF No. 64. Plaintiffs' authentication of this document serves to satisfy the authentication

15   requirement as to all parties with respect to the document. Orr, 285 F.3d at 776 ("[W]hen a

16   document has been authenticated by a party, the requirement of authenticity is satisfied as to that

17   document with regards to all parties, subject to the right of any party to present evidence to the

18   ultimate fact-finder disputing its authenticity."). Therefore, this exhibit will be considered.

19        The Court now turns to each of the Motions for Summary Judgment pending before it.

20   **B.  Amended Complaint Between Plaintiffs and American Family**

21        The Court finds that Nevada law applies to all of Plaintiffs' claims, denies summary

22   judgment on Plaintiffs' negligence claim, and grants summary judgment in favor of American

23   Family on the claims for breach of implied covenant of good faith and fair dealing, breach of

24   contract, and breach of Nevada's Unfair Claims Practices Act.

25   . . .

26   . . .

27   . . .

28   . . .

1    1.   **Choice of Law**

2        Plaintiffs' Amended Complaint alleges claims in both tort and contract. While the action

3    was brought in Nevada, the alleged loss or destruction of the tire and the underlying accident

4    occurred in California. Applying Nevada's choice of law principles, the Court finds that Nevada

5    law applies to all of Plaintiffs' claims.

6        *a.  Legal Standard*

7        "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the

8    State in which it sits." Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court, 134 S.Ct. 568, 582

9    (2013). To determine which state's law to apply in tort claims, Nevada applies the Second

10   Restatement's "most significant relationship" test. Gen. Motors Corp. v. Eighth Judicial Dist.

11   Court, 134 P.3d 111, 116 (Nev. 2006). Under this test, "the rights and liabilities of parties with

12   respect to an issue in tort are governed by the local law of the state that, 'with respect to that issue,

13   has the most significant relationship to the occurrence and the parties under the principles stated

14   in [Section] 6'" of the Second Restatement. Id. (quoting Restatement (Second) of Conflict of Laws

15   § 145). That section states that when there is no state statute on choice of law, courts apply the

16   following factors:

17           (a) the needs of the interstate and international systems,
             (b) the relevant policies of the forum,
18           (c) the relevant policies of other interested states and the relative interests
                 of those states in the determination of the particular issue,
19           (d) the protection of justified expectations,
             (e) the basic policies underlying the particular field of law,
20           (f) certainty, predictability and uniformity of result, and
21           (g) ease in the determination and application of the law to be applied.

22       Restatement (Second) of Conflict of Laws § 6. In applying these principles, courts should

23   consider the "contacts" of the parties, including the place of injury, the place where the conduct

24   that caused the injury occurred, the place of incorporation and place of business of the parties, and

25   the place where the parties' relationship is centered. Id. § 145(2). Of these principles, several are

26   of heightened importance for tort suits, "particularly . . . the state with the dominant interest in the

27   determination of the particular issue, and ease in the determination and application of the law to

28   be applied." Id. at cmt. (b). However, the most significant relationship test is a general rule, and if

1    a more specific provision of the Second Restatement applies for a particular tort, courts should

2    apply that provision. Gen. Motors Corp., 134 P.3d at 117.

3          To determine which state's law to apply to contract claims, Nevada uses the "substantial

4    relationship" test. Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc., 971 P.2d 1251, 1253

5    (Nev. 1998). To determine whether a state possesses a substantial relationship with a contract,

6    courts consider five factors: "[1] the place of contracting, [2] the place of negotiation of the

7    contract, [3] the place of performance, [4] the location of the subject matter of the contract, and

8    [5] the domicile, residence, nationality, place of incorporation and place of business of the parties."

9    Id. at 1253-54. Additionally, applying another state's law must not violate a strong public policy

10   of Nevada. Id. at 1254. Courts apply these factors to decide which state bears the most significant

11   relationship to the contract. Id.

12                          **b.  *Nevada Law Applies to Plaintiffs' Tort Claim***

13         The Court finds that Nevada holds the most significant relationship to the occurrence and

14   the parties at issue and that Nevada law therefore applies to Plaintiffs' negligence claim against

15   American Family. First, the Court notes that no specific provision of the Restatement governs

16   negligence claims, so the more general test of Section 145 applies to that claim. Gen. Motors Corp.,

17   134 P.3d at 117. Applying this test, Nevada clearly has the most significant relationship to

18   Plaintiffs' negligence claim. First, the contacts of the parties are centered in Nevada. The actual

19   injury Plaintiffs assert is the loss of their state court lawsuit. While this injury is intertwined with

20   the loss of the tire, which occurred in California, the actual lawsuit was brought and later dismissed

21   in Nevada. The lawsuit was also brought to recover for the injuries of Nevada residents, at least

22   one of whom was insured by American Family in Nevada.

23         Second, several of the factors outlined in Section 6 of the Restatement favor the application

24   of Nevada law. Nevada clearly has a strong interest in determining whether insurance companies

25   insuring its residents have acted negligently and thereby contributed to the dismissal of an action

26   in its own courts. The parties' justified expectations are also protected by applying Nevada law, as

27   it is predictable that Nevada law would apply to a dispute over whether a party negligently caused

28   another party to lose a civil action in Nevada state court.

1    For these reasons, the Court will apply Nevada law to Plaintiffs' negligence claim.

2    ### c.   *Nevada law Applies to Plaintiffs' Contract Claims*

3    The Court also finds that Nevada bears the most substantial relationship to the contract at

4    issue in Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith

5    and fair dealing, and therefore will apply Nevada law to those claims. The contract that serves as

6    the basis for these claims is the Nevada Family Car Policy between Plaintiff Contreras and

7    American Family. See Def.'s Mot. Summ. J. on Pls.' Claims Ex. D, ECF No. 56. The Court does

8    not have information before it as to the place where the parties entered into or negotiated the

9    contract, and so the first and second factors of the substantial relationship test are neutral. Factors

10   three and four (place of performance and location of subject matter of the contract), however,

11   appear to weigh in favor of applying Nevada law. The insurance policy covered Contreras, a

12   Nevada resident who presumably would drive primarily in Nevada. The fifth factor (domicile,

13   residence, place of incorporation and place of business of the parties) also favors applying Nevada

14   law, as one party to the insurance policy was a Nevada resident and the other was a Wisconsin

15   corporation doing business in Nevada. Accordingly, the Court finds that Nevada has a substantial

16   relationship with the insurance policy at issue and will apply Nevada law to Plaintiffs' contract-

17   based claims.

18   ### 2.   **The Merits of Plaintiffs' Claims**

19   The Court finds that summary judgment should be denied as to Plaintiffs' negligence claim

20   and granted in favor of American Family as to Plaintiffs' claims for breach of contract, breach of

21   the implied covenant of good faith and fair dealing, and breach of Nevada's Unfair Claims

22   Practices Act.

23   ### a.   *Negligence*

24   The Court concludes that American Family owed a duty to Plaintiffs to exercise reasonable

25   care to preserve the tire and that genuine issues of material fact exist as to whether American

26   Family breached that duty and whether American Family's conduct proximately caused Plaintiffs'

27   lawsuit to be dismissed. Therefore, summary judgment is denied on Plaintiffs' negligence claim.

28

In Nevada, "to prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc., 221 P.3d 1276, 1280 (Nev. 2009). The existence of a duty is "a question of law to be determined solely by the courts." Turner v. Mandalay Sports Entm't, LLC, 180 P.3d 1172, 1177 (Nev. 2008). While the tort of negligence can be committed by parties to a contract, the alleged breach must be of a duty imposed by law independent of any contractual duty. Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). Breach and proximate cause, however, are generally questions of fact for the jury to decide. Foster v. Costco Wholesale Corp., 291 P.3d 150, 153 (Nev. 2012); Lee v. GNLV Corp., 22 P.3d 209, 212 (Nev. 2001).

Here, construing the facts in the light most favorable to Plaintiffs, the Court finds that American Family owed a duty to Plaintiffs to preserve the tire for Plaintiffs' use in both parties' litigation against the tire and car manufacturers. While there is no independent tort for spoliation of evidence in Nevada, the Supreme Court of Nevada has stated that a negligence claim for spoliation may exist where the circumstances of the case show that the defendant owed a duty to the plaintiff to preserve evidence. Timber Tech Engineered Bldg. Prods. v. The Home Ins. Co., 55 P.3d 952, 954-55 (Nev. 2002). Those circumstances are present in this case. "[E]ven where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." Fire Ins. Exch. v. Zenith Radio Corp., 747 P.2d 911, 914 (Nev. 1987). Although the Supreme Court of Nevada has only applied this duty in the context of whether to impose discovery sanctions for destruction of evidence, the Court finds, based upon the parties' communications, that the duty owed by American Family to Plaintiffs extended beyond this limited context. Plaintiffs and American Family were litigants in the same consolidated state court action and Plaintiffs specifically requested that American Family preserve all evidence relevant to that action, including the subject car and tire. See Pls.' Opp'n Mot. Summ. J. Ex. 1, ECF No. 64. American Family took actions indicative of an intention to comply with that request, including contacting counsel for Plaintiffs and all other parties to the consolidated litigation to coordinate a joint inspection of the

1    subject vehicle and tire after the request was made. Id. This correspondence demonstrates that

2    American Family agreed to take reasonable steps to preserve the tire for Plaintiffs' use in the

3    litigation.

4           The Court also finds that a genuine issue of material fact exists as to whether American

5    Family breached the duty it owed to Plaintiffs to preserve the tire. Although American Family

6    contends that it acted reasonably to ensure that the car and tire were preserved and that it was

7    reasonable to send the tire to Copart given its "extensive procedures for security of vehicles," Mot.

8    Summ. J. on Pls.' Claims at 15, these arguments are belied by Copart's contract with American

9    Family, which states that Copart does not act as an evidence storage facility. Copart Contract §

10   2.18. In addition, Copart's Lot Notes reveal that an American Family representative did not inform

11   Copart that the tire was being sent back to it or instruct Copart to place the subject tire inside the

12   vehicle until April 30, 2007—more than a month after Copart actually received the tire, according

13   to the testimony of American Family's Rule 30(b)(6) representative. Copart Lot Notes, Mot.

14   Summ. J. on Pls.' Claims Ex. H; Dep. of Renee Inabinet, Pls.' Opp'n Ex. 4 at 26:10-19. Based

15   upon this evidence, a reasonable jury could conclude that American Family breached its duty to

16   Plaintiffs to exercise reasonable care to preserve the tire by deciding to store it in Copart's facility

17   or by failing to take the necessary steps to promptly advise Copart that additional action needed to

18   be taken to protect the tire.

19          The Court also finds that a genuine issue of material fact exists with respect to whether the

20   alleged breach was the proximate cause of Plaintiffs' damages. Proximate cause is demonstrated

21   where "the injury was the natural and probable consequence" of the negligent act and where the

22   injury was foreseeable under the circumstances. Van Cleave v. Kietz-Mill Minit Mart, 633 P.2d

23   1220, 1221 (Nev. 1981). Here, Plaintiffs have provided EFI's Tire Failure Analysis report,

24   completed on March 13, 2007, which constitutes evidence supporting a finding that the subject tire

25   contained a manufacturing defect. Pls.' Opp'n Mot. Summ. J. Ex. 12. Based upon this evidence

26   and the fact that American Family and Plaintiffs were litigants in the same lawsuit, a reasonable

27   jury could conclude that it was natural, probable, and foreseeable that American Family's allegedly

28   negligent loss of a tire that had been preliminarily found to be defective would lead to the dismissal

of Plaintiffs' lawsuit against the manufacturers, which was premised on the existence of such a defect.

Further, the Court finds that the damages claimed by Plaintiffs are not so speculative as to bar recovery. "Damages cannot be based solely upon possibilities and speculative testimony. . . . When circumstantial evidence is used to prove a fact, the circumstances must be proved, and not themselves be presumed." Franchise Tax Bd. of Cal. v. Hyatt, 335 P.3d 125, 156 (Nev. 2014) (citations and internal quotation marks omitted). "The party seeking damages has the burden of proving both the fact of damages and the amount thereof. The latter aspect of the burden need not be met with mathematical exactitude, but there must be an evidentiary basis for determining a reasonably accurate amount of damages." Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co., Inc., 784 P.2d 954, 955 (Nev. 1989) (citations omitted).

Here, Plaintiffs have provided evidence from which a reasonable jury could conclude that American Family's conduct caused damage to Plaintiffs. In Nevada, strict liability applies to product liability cases. Maduike v. Agency Rent-A-Car, 953 P.2d 24, 27 (Nev. 1998) ("To present a prima facie case for strict liability in tort, a plaintiff must establish that her injuries were caused by a defect in the product, and that the defect existed when the product left the defendant's control."). The Tire Failure Analysis conducted by EFI provides at least a preliminary conclusion that the subject tire failed due to a manufacturing defect. Pls.' Opp'n Mot. Summ. J. Ex. 12. This evidence, taken in the light most favorable to the nonmoving party (as is required at the summary judgment stage), is sufficient to establish a genuine issue of disputed fact as to whether Plaintiffs would have prevailed in their state court lawsuit against the manufacturers had the tire not been lost or destroyed. Therefore, Plaintiffs may proceed to trial on this theory of damages.[1]

The Court recognizes that this ruling may require Plaintiffs to conduct a "trial within a

---

[1] In its Reply, American Family attempted to present evidence that Plaintiffs did not oppose the manufacturers' motion for summary judgment in their state court lawsuit. As this evidence was introduced for the first time in a reply brief, the Court declines to consider it. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) ("'[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond.") (internal quotation marks omitted). Even if the Court were to consider this evidence, American Family has cited no authority supporting the proposition that Plaintiffs could have prevailed in the earlier lawsuit without the tire had they opposed the motion for summary judgment.

trial" to prove their negligence cause of action. While not explicitly adopted in Nevada, this approach is well-established for professional negligence and malpractice actions in other states, such as California. See, e.g., Mattco Forge, Inc. v. Arthur Young & Co., 60 Cal. Rptr. 2d 780, 790 (Cal. Ct. App. 1997) (applying the trial-within-a-trial approach to a plaintiff's malpractice claim against an accountant providing litigation support services, and stating that "in order to prevail against [the defendant] in this action, [the plaintiff] has the burden to establish that had [the defendant] properly handled the underlying case, [the plaintiff] would have prevailed [in its underlying action].");  id. at 789-90 (noting that this doctrine is accepted in several other jurisdictions, including Oregon, Illinois, and Iowa); Arciniega v. Bank of San Bernardino, 60 Cal. Rptr. 2d 495, 506 (Cal. Ct. App. 1997) (applying the "case-within-a-case" doctrine to a legal malpractice claim and stating that "the misperforming attorney must stand in and submit to being the target instead of the former target which the attorney negligently permitted to escape.").

Although the Supreme Court of Nevada has not explicitly adopted this approach in a published opinion, it has done so in at least one unpublished case. See Wacht v. Peel & Brimley, LLP, no. 64555, 2015 WL 4503945, at *2 (Nev. July 21, 2015) (applying the doctrine to a legal malpractice action and stating that "[e]stablishing causation . . . requires the plaintiff to prove what has been characterized as a case within a case, that is, the plaintiff must demonstrate that the claim underlying the malpractice action would have been successful if the attorney had acted in accordance with his or her duties.") (citations and internal quotation marks omitted). Based upon its review of the law, the Court finds it likely that the "trial within a trial" approach would be adopted in Nevada as the standard by which Plaintiffs must prove their negligence claim.

With respect to the amount of damages, American Family does not dispute Plaintiffs' assertion that the general and special damages they claim to have suffered in their state court lawsuit would be reasonably ascertainable through documentary evidence of medical expenses and lost wages and testimonial evidence regarding pain and suffering. Therefore, Plaintiffs have established that neither the fact nor the amount of damages are overly speculative.

Finally, the Court finds that the economic loss doctrine does not bar Plaintiffs' recovery. Generally, the economic loss doctrine bars unintentional tort actions for "purely economic losses."

Terracon Consultants Western, Inc. v. Mandalay Resort Grp., 206 P.3d 81, 86 (Nev. 2009). "Purely economic loss is generally defined as the loss of the benefit of the user's bargain, including pecuniary damage for inadequate value, the cost of repair and replacement of a defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." Calloway v. City of Reno, 993 P.2d 1259, 1263 (Nev. 2000), overruled on other grounds by Olson v. Richard, 89 P.3d 31, 31-33 (Nev. 2004). The purpose of the economic loss doctrine is "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." Terracon, 206 P.3d at 86-87. The doctrine is also derived from the policy concern that tort liability for economic losses could deter "useful commercial activity," and that "[i]nstead, when economic loss occurs as a result of negligence in the context of commercial activity, contract law can be invoked to enforce the quality expectations derived from the parties' agreement." Id. at 87.

Here, the economic loss doctrine does not apply for two reasons. First, it is not clear that Plaintiffs seek to recover purely economic losses. Plaintiffs seek to recover the damages for lost wages, medical expenses, property damage, and pain and suffering and loss of enjoyment of life that American Family allegedly prevented them from obtaining in their state court lawsuit. These damages are extremely closely related to Plaintiffs' personal injuries resulting from the car accident. There is no indication that Plaintiffs only seek diminution in value, the cost of repairs or replacement, fees or lost profits, or other "purely economic" losses from American Family. Instead, Plaintiffs seek damages arising from the right to recover for personal injuries and property damage of which American Family allegedly deprived them. American Family, as a party to Plaintiffs' state court lawsuit, knew the extent of these potential damages and therefore could apprehend its potential liability for actions that allegedly denied Plaintiffs this right. Unlimited liability for the economic consequences of American Family's allegedly negligent acts is therefore not a concern here because Plaintiffs' damages are "reasonably calculable." Id.

Second, as will be discussed below, the alleged actions by American Family and harm suffered by Plaintiffs fall outside the scope of the parties' contract, and therefore contractual

remedies are not available to Plaintiffs to recover their losses. Exceptions to the economic loss doctrine exist "'in [a] certain categor[y] of cases when strong countervailing considerations weigh in favor of imposing liability,'" such as "cases where there is significant risk that 'the law would not exert significant financial pressures to avoid such negligence.'" Halcrow, Inc. v. Eighth Judicial Dist. Court, 302 P.3d 1148, 1153 (Nev. 2013) (alterations in original) (quoting Terracon, 206 P.3d at 86, 88). In Halcrow, the Supreme Court of Nevada held:

> [I]n the context of commercial construction design professionals, negligent misrepresentation claims do not fall into such a category because contract law is better suited for resolving such claims. Further, in commercial construction situations, the highly interconnected network of contracts delineates each party's risks and liabilities in case of negligence, which in turn exert significant financial pressures to avoid such negligence.

302 P.3d at 1153 (internal quotation marks omitted). Here, by contrast, American Family's duty to preserve the subject tire (to which it had already acquired title) was not covered by the contract between Plaintiffs and American Family. Contract law is therefore not suited to address Plaintiffs' claim against American Family because there were no contractual provisions "delineat[ing] each party's risks and liabilities in case of negligence" or "exert[ing] significant financial pressures to avoid such negligence." Id. Taking the evidence in the light most favorable to Plaintiffs, the Court thus concludes that Plaintiffs' negligence claim is not barred by the economic loss doctrine. Summary judgment is denied on this claim.

### b. Breach of contract

The Court finds that a contract existed between Plaintiffs and American Family. However, even construing the evidence in the light most favorable to Plaintiffs, American Family's alleged conduct did not constitute a breach of that contract.

Under Nevada law, breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (1987). A breach of contract claim requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson). When facts are

1    not in dispute, contract interpretation is a question of law for the court. <u>Lehrer McGovern Bovis,</u>

2    <u>Inc. v. Bullock Insulation, Inc.</u>, 197 P.3d 1032, 1041 (Nev. 2008).

3          American Family is entitled to summary judgment on Plaintiffs' breach of contract claim.

4    Neither party disputes that a valid contract existed between American Family and Plaintiff Iris

5    Contreras. <u>See</u> Nevada Family Car Policy, Mot. Summ. J. on Pls.' Claims Ex. D. However,

6    American Family did not breach that contract by allegedly causing the subject tire to be lost or

7    destroyed because the contract did not address the preservation of evidence. The insurance policy

8    sets forth the types and maximum amounts of payments for which American Family will be

9    responsible if an accident occurs. The Court cannot identify, nor have the Plaintiffs pointed to, any

10   provision in the contract that required American Family to preserve evidence for Contreras's

11   benefit after American Family had already paid out its policy limit and taken title to that evidence.

12   American Family cannot breach an obligation that was not in the contract. Therefore, summary

13   judgment is granted in favor of American Family on Plaintiffs' breach of contract claim.

14                    *c.   **Breach of the Implied Covenant of Good Faith and Fair Dealing***

15          The Court also concludes based on the evidence before it that American Family did not

16   breach the implied covenant of good faith and fair dealing.

17          In Nevada, every contract contains an implied covenant of good faith and fair dealing.

18   <u>Hilton Hotels Corp. v. Butch Lewis Productions, Inc.</u>, 808 P.2d 919, 922 (Nev. 1991). A claim for

19   breach of that implied covenant exists "[w]here the terms of a contract are literally complied with

20   but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ."

21   <u>Id.</u> at 922-23; <u>see also</u> <u>id.</u> at 923 ("When one party performs a contract in a manner that is unfaithful

22   to the purpose of the contract and the justified expectations of the other party are thus denied,

23   damages may be awarded against the party who does not act in good faith."). In certain

24   circumstances, the defendant may also be tortiously liable for breach of the implied covenant of

25   good faith and fair dealing where the relationship between the parties "approximates that kind of

26   special reliance, trust and dependency that is present in insurance cases" and the defendant betrays

27   that relationship in bad faith. <u>D'Angelo v. Gardner</u>, 819 P.2d 206, 215 (Nev. 1991).

28

The Court finds that Plaintiffs have put forth no evidence to support their claim of breach of the implied covenant of good faith and fair dealing. Plaintiffs do not dispute that American Family processed Contreras's claim properly. Plaintiffs have produced no evidence suggesting that American Family, to the extent its actions caused the loss or destruction of the tire, acted in bad faith or in deliberate contravention of the intention and spirit of its insurance policy with Contreras. Rather, the evidence shows that American Family placed the car (and with it, the tire) in Copart's Safeguard Program. Plaintiffs have produced no evidence creating a genuine issue of material fact as to whether American Family acted in bad faith or deliberately to deprive Contreras of the benefit of her contract with American Family. Therefore, summary judgment is granted in favor of American Family on this claim.

### d.  Breach of Nevada's Unfair Claims Practices Act

Finally, the Court concludes based on the evidence before it that, as a matter of law, American Family did not breach Nevada's Unfair Claims Practices Act, N.R.S. 686A.310. This statute gives insured individuals a private right of action against their insurers "for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 [of the Act] as an unfair practice." N.R.S. 686A.310(2). Subsection 1 states that "failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies," among other acts, is considered an unfair practice. N.R.S. 686A.310(1)(c).

The Court finds that Plaintiffs have presented no evidence to support their claim for breach of the Unfair Claims Practices Act. As with Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs do not dispute that American Family processed Contreras's claim properly. However, as discussed above, the loss or destruction of the subject tire, which Plaintiffs allege was due to American Family's negligence, is not a claim "arising under" Contreras's insurance policy and therefore cannot serve as a basis for breach of subsection (1)(c) of the Unfair Claims Practices Act. Even if the negligent loss or destruction of the tire were a claim arising under the insurance policy, Plaintiffs have provided no evidence suggesting that American Family failed to adopt procedures to investigate the loss of the tire. Nor have Plaintiffs identified

1   any other subsection of the Act under which American Family might be liable. Therefore,

2   summary judgment is granted in favor of American Family on Plaintiffs' claim for breach of

3   Nevada's Unfair Claims Practices Act.

4

5   ### C.   Third-Party Complaint Between American Family and Copart

6   Turning to the Third-Party Complaint, the Court finds that Nevada law governs American

7   Family's contract-based claims against Copart, while California controls the tort-based claims.

8   The Court grants summary judgment in favor of American Family on its claims for breach of

9   contract, negligent bailment, and express indemnity. The Court grants summary judgment in favor

10  of Copart on the implied indemnity, contribution, and apportionment claims.

11  #### 1.   Choice of Law

12  American Family's Third Party Complaint alleges claims in both contract and tort. While

13  the action was brought in Nevada, many of the key events at issue in the case occurred in

14  California. As it stated at the hearing, the Court finds that Nevada law applies to American

15  Family's contract-based claims, while California law governs its tort claims. As the legal standards

16  for determining the law to be applied to both types of claims were previously discussed above, the

17  Court does not repeat them here.

18  ##### a.   Nevada Law Applies to American Family's Contract Claims

19  Applying the substantial relationship test, the Court finds that Nevada law governs

20  American Family's contract-based claims, which are its claims for breach of contract, express

21  indemnity, and implied indemnity.[2] The Court does not have information before it as to the place

22  where the parties entered into or negotiated the contract, and so the first and second factors of the

23  substantial relationship test are neutral. Factors three and four, however, weigh in favor of applying

24  Nevada law. The parties' contract states that Copart has the right to sell all vehicles acquired by

25  _____

26  [2] Under Nevada law, a claim for implied indemnity is based in contract. Saylor v. Arcotta,
    225 P.3d 1276, 1278-79 (Nev. 2010) (applying the statute of limitations for contract-based claims

27  to a claim for implied indemnity and holding that "claims for equitable indemnity are based upon
    a theory of implied contract"). Nevada law governs whether this claim is classified as being based

28  in tort or contract. Restatement (Second) of Conflict of Laws § 7(2) (Generally, "[t]he
    classification and interpretation of Conflict of Laws concepts and terms are determined in
    accordance with the law of the forum").

American Family within the area covered by "the Nevada Claims Office." Copart Contract §§ 2.01-02. It also provides that Copart shall arrange for the towing of all vehicles to its nearest facility or affiliate. Id. § 2.04. Therefore, it appears that the parties intended Nevada to be the primary place of performance of the contract. The subject matter of the contract—the vehicles "acquired by [American Family] through settlement with an insured or claimant"—also appears to primarily be located within Nevada. Id. § 1.01. Finally, the fifth factor does not weigh heavily in favor of any one state's law. American Family is a Wisconsin corporation with a principal place of business in Wisconsin. Copart is a Delaware corporation with a principal place of business in California. Based upon application of these factors, the Court finds that Nevada has a substantial relationship to the Copart Contract and that Nevada law applies to claims based upon that contract.

### b.  California Law Applies to American Family's Tort Claims

The Court finds that California has the most significant relationship to the occurrence underlying American Family's tort claims and will therefore apply California law to those claims, which include the claims for negligent bailment, contribution, and apportionment. First, the Court notes that no specific provision of the Restatement governs negligent bailment claims, and so the more general test of Section 145 applies to that claim. Gen. Motors Corp., 134 P.3d at 117. Claims for contribution and apportionment are governed by the law selected by application of the test of Section 145. See Restatement (Second) of Conflict of Laws §§ 172-173. Accordingly, Section 145's most significant relationship test determines the choice of law of all three tort-based claims in the Third-Party Complaint.

Applying this test, California clearly has the most significant relationship to American Family's tort claims. The actual injury (the loss of Plaintiffs' tire) occurred in California. There is evidence that a Copart representative accepted delivery of the tire at its facility in California and that the tire was subsequently lost or destroyed while in Copart's custody. Therefore, the conduct causing the injury likely occurred in California as well.  Moreover, Copart is a corporation with its principal place of business in California and was charged with the care of property following an accident that took place in California.

. . .

Notwithstanding the fact that American Family's and Copart's contractual relationship appears to have been centered in Nevada, then, California has the most significant relationship to the loss of the tire and the parties.

Further, several additional factors as laid out in Section 6 of the Restatement support the application of California law. First, California has an interest in ensuring that potentially relevant evidence resulting from accidents occurring on its roadways is preserved and that corporations doing business within its borders exercise due care in preserving such evidence. Second, as an entity with its principal place of business in California, Copart can expect to be subjected to that state's laws, including its tort laws. Finally, this Court has no difficulty in determining and applying California tort law. For these reasons, California law shall apply to American Family's claims for negligent bailment, contribution, and apportionment.

## 2.   The Merits of American Family's Claims

The Court concludes that summary judgment should be granted one way or the other on all six claims asserted in the Third-Party Complaint. Summary judgment is granted in favor of American Family on its claims for breach of contract, negligent bailment, and express indemnity. The Court grants summary judgment in favor of Copart on the implied indemnity, contribution, and apportionment claims.

### a.   Breach of Contract

The Court finds that the Safeguard Program delineated in the contract between American Family and Copart imposed a duty on Copart to preserve all parts of the car that were essential to its function and not of *de minimis* value. As there is no dispute that American Family requested that Plaintiffs' car be placed in the Safeguard Program and that Copart was responsible for the loss or destruction of the tire, Copart breached its contract with American Family.

As set forth above, the elements of a breach of contract claim in Nevada are (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

- 22 -

1      The Court finds that Copart breached its contract with American Family. Based upon the

2   undisputed evidence, all three elements have been met here. First, it is undisputed that a valid

3   contract existed between American Family and Copart. See Copart Contract, Third-Party Def.'s

4   Mot. Summ. J. Ex. A.

5      Second, the Court concludes that Copart's undisputed act of losing or destroying the tire

6   constitutes a breach of the contract. The Safeguard Program provision in the contract prevents the

7   sale, auction, or disposal of "any Vehicle" that is the subject of litigation. Copart Contract § 2.18.

8   Although the contract does not specify what component parts are included within the term

9   "Vehicle," the Court finds that the term necessarily encompasses the tires of the vehicle. As

10   admitted by Copart at the hearing, tires are essential to any vehicle's intended function and are not

11   of *de minimis* value. To hold that the Safeguard Program does not encompass the tires of vehicles

12   would mean that Copart could then damage or remove essential components of any vehicle (such

13   as the engine or internal computer) placed within the program, or replace those components with

14   ones of significantly lower value, without penalty. The Court finds that the Safeguard Program by

15   implication protects the essential components of the vehicles placed within it, including tires. The

16   Court also finds that by causing the tire to be lost or destroyed, Copart "disposed of" an essential

17   component of a vehicle in violation of the Safeguard Program.

18      Third, it is undisputed that American Family was damaged as a result of the breach, which

19   satisfies the final element of its breach of contract claim. Summary judgment is therefore granted

20   in favor of American Family on its breach of contract claim. However, pursuant to the Limitation

21   of Liability clause in the contract, American Family's damages are limited to the lesser of the

22   actual cost of replacing the tire or the negative impact of the missing tire on the car's salvage value.

23   Copart Contract § 2.33.

24                          ***b.  Negligent Bailment***

25      The Court concludes that no genuine issues of material fact remain on American Family's

26   negligent bailment claim and that it is appropriate to grant summary judgment on this claim in

27   favor of American Family.

28

In California, an action for negligence requires a showing of duty, breach of duty, causation, and damages. Merrill v. Navegar, Inc., 28 P.3d 116, 139 (Cal. 2001). In the context of bailments, duty is defined more specifically: "A depository for hire must use at least ordinary care for the preservation of the thing deposited." Cal. Civ. Code § 1852; see also Hall v. Osell, 228 P.2d 293, 295 (Cal. Dist. Ct. App. 1951). Generally, causation is a question of fact reserved for the jury unless no reasonable juror would dispute its absence. Saelzler v. Advanced Grp. 400, 23 P.3d 1143, 1158 (Cal. 2001).

The Court finds that summary judgment should be granted in favor of American Family on its negligent bailment claim. At oral argument on the parties' motions for summary judgment, Copart conceded that if a duty existed to preserve the tire, it could not contest that it breached that duty and that its breach caused damage to American Family. Upon careful consideration of the evidence before it, the Court finds as a matter of law that Copart was a depository for hire (i.e. a bailee) and therefore owed American Family a duty of ordinary care for the preservation of the tire. Under California law, a depository for hire is one who receives a nongratuitous deposit of personal property. Cal. Civ. Code §§ 1814, 1851.[3] Here, neither American Family nor Copart disputes that their contract was negotiated for valuable consideration. While Copart contends that it did not charge a fee for the Safeguard Program, it clearly was included within the contract price, and it was therefore something that American Family bargained for. It is also undisputed that American Family requested that the subject vehicle be placed in the Safeguard Program and that Copart received the subject tire at its California facility after it had been sent to EFI for analysis. The tire was a nongratuitous deposit of American Family's property, and Copart was therefore a bailee of the tire and owed a duty of ordinary or reasonable care to American Family to preserve it.

As Copart does not dispute the elements of breach or causation, the only remaining issue in this claim is the extent of damages. The Court finds that Copart's potential liability to American Family for negligence is limited by the parties' contract. The Limitation of Liability Clause states

---

[3] "Personal property" is defined under the California Civil Code as "money, goods, chattels, things in action, and evidences of debt," a definition that clearly includes the subject tire. Cal. Civ. Code § 14(3).

that "Copart's liability for damage to a vehicle in its possession shall be limited to the lesser of (1) the actual cost to repair the damage to such vehicle which is caused by Copart, or (2) the negative impact to the salvage value of such vehicle." Copart Contract § 2.33. The Court finds this clause to be unambiguous in its intention to limit Copart's liability in tort to American Family. Nevertheless, Nevada requires that these types of exculpatory clauses receive special scrutiny where they seek to limit tort liability.

Under Nevada contract law, exculpatory clauses are generally valid. <u>Agricultural Aviation Eng. Co. v. Bd. of Clark Cnty. Comm'rs</u>, 794 P.2d 710, 712 (Nev. 1990) (citation omitted). However,

> [A]dditional standards must be met before [an exculpatory clause] will be interpreted to relieve a person of liability that the law would otherwise impose. These standards are: (1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorite of the law; (2) such contracts must spell out the intention of the party with the greatest particularity and show the intent to release from liability beyond doubt by express stipulation and no inference from the words of general import can establish it[;] (3) such contracts must be construed with every intendment against the party who seeks immunity from liability[; and] (4) the burden to establish immunity from liability is upon the party who asserts such immunity." <u>Id.</u> at 712-13 (Nev. 1990) (citation omitted).

<u>Id.</u> at 712-13 (citation omitted). Construing the Limitation of Liability clause strictly and against Copart, the Court finds that the clause unambiguously reflects the parties' intent that Copart's tort liability to American Family be limited as described in the clause. The clause lays out this intention beyond doubt and with particularity. Therefore, while summary judgment is granted in favor of American Family on its negligent bailment claim, Copart's liability is limited to the lesser of (1) the actual cost of replacing the tire, or (2) the negative impact of the loss of the tire to the salvage value of the vehicle.

### c. *Express Indemnity*

The Court concludes that pursuant to the parties' indemnity clause, Copart is obligated to indemnify and defend American Family from Plaintiffs' claims to the extent that Plaintiffs' damages are directly attributable to Copart's actions.

1    In Nevada, "[a]n indemnity clause imposing a duty to defend is construed under the same

2    rules that govern other contracts." <u>Reyburn Lawn & Landscape Designers, Inc. v. Plaster Dev.</u>

3    <u>Co., Inc.</u>, 255 P.3d 268, 277 (Nev. 2011). Indemnity clauses must be strictly construed, and if the

4    clause contains language limiting indemnity to only those liabilities that arise out of the

5    indemnitor's duties under the contract, then the indemnitor is only required to indemnify the other

6    party for damages that can be attributed to its own actions. <u>Id.</u> at 275.

7    The duty to defend, however, "is broader than the duty to indemnify because it covers not

8    just claims under which the indemnitor is liable, but also claims under which the indemnitor *could*

9    *be* found liable." <u>Id.</u> at 277 (emphasis added) (internal quotation marks omitted). But "unless

10   specifically otherwise stated in the indemnity clause, an indemnitor's duty to defend an indemnitee

11   is limited to those claims directly attributed to the indemnitor's scope of work and does not include

12   defending against claims arising from . . . the indemnitee's own negligence." <u>Id.</u> To invoke the

13   duty to defend, the complaint must sufficiently allege negligence on the part of the indemnitor, or

14   the plaintiffs' claims must have concerned the indemnitor's scope of work under the contract. <u>Id.</u>

15   at 278.

16   Here, the Court's grant of summary judgment in favor of American Family on its claims

17   for breach of contract and negligent bailment trigger the indemnity clause in the contract between

18   American Family and Copart. This clause provides that each party will indemnify, defend, and

19   hold harmless the other party for all damages and expenses "related to claims made by third parties

20   against the Indemnified Party that arise out of (i) any dealing between the Indemnifying Party and

21   third parties, (ii) any act or omission by the Indemnifying Party which is contrary to any term of

22   this Agreement, and (iii) any negligent act by the Indemnifying Party." Copart Contract § 2.21.

23   Copart's loss or destruction of the tire constitutes a breach of contract, thereby activating the

24   indemnity clause under subsection (ii), and also constitutes a negligent act, thereby doing the same

25   under subsection (iii). Because the clause limits Copart's duty to indemnify and defend to only

26   those damages and expenses that "arise out of" Copart's breach and negligent conduct, American

27   Family may be indemnified only to the extent to which it was not independently negligent toward

28   Plaintiffs, a finding the Court does not and cannot make at this time. <u>United Rentals Hwy. Techs.</u>

1  v. Wells Cargo, 289 P.3d 221, 227 (Nev. 2012). This apportionment will be done at such time as

2  the jury makes a decision as to whether American Family acted negligently and, if so, its degree

3  of fault. See Reyburn, 255 P.3d at 278 (approving of such an apportionment process by a California

4  trial court).

5  As for Copart's duty to defend American Family, Plaintiffs' negligence claim against

6  American Family for the loss or destruction of the tire concerns the scope of Copart's duties under

7  its contract with American Family. American Family has also successfully alleged negligence on

8  the part of Copart. Therefore, Copart has a duty to defend American Family. However, the

9  Amended Complaint also potentially implicates American Family's own negligence, and thus

10 Copart is not required to defend American Family to the extent Plaintiffs' negligence claim arises

11 from those potentially negligent actions.

12 The Court cannot determine at this time the extent to which Plaintiffs' claims are directly

13 attributable to Copart's actions versus American Family's actions. Therefore, American Family is

14 still required to defend itself in this action, and may bring a motion, once the issue of its own

15 liability has been determined, for attorney's fees and other costs of defending itself to the extent

16 that its defense related to Copart's negligent acts. Summary judgment is therefore granted in favor

17 of American Family on its express indemnity claim, although the extent of Copart's duty to

18 indemnify and defend American Family will be determined after the resolution of Plaintiffs'

19 negligence claim.

20                                        *d.  Implied Indemnity*

21 The Court finds that American Family's claim for implied indemnity is precluded by its

22 express indemnity claim, for which the Court has granted summary judgment in American

23 Family's favor. In Nevada, "[w]hen the duty to indemnify arises from contractual language, it

24 generally is not subject to equitable considerations; rather[,] it is enforced in accordance with the

25 terms of the contracting parties' agreement." United Rentals, 289 P.3d at 226 (quoting Reyburn,

26 255 P.3d at 274). Therefore, the Court grants summary judgment in favor of Copart on implied

27 indemnity.

28

*e.   Contribution*

The Court finds that American Family's claim for contribution is precluded by California law. Generally, "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them . . . ." Cal. Civ. P. Code § 875(a). However, "where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them." Id. § 875(f); see also Coca-Cola Bottling Co. v. Lucky Stores, Inc., 14 Cal. Rptr. 2d 673, 677 (Cal. Ct. App. 1992) ("Where a right of indemnity exists there can be no right of contribution."). The Court has found that American Family is entitled to indemnification from Copart to the extent Plaintiffs' damages were not caused by the independent negligence of American Family. Therefore, summary judgment is granted in favor of Copart on the contribution claim.

*f.   Apportionment*

The Court finds that American Family's apportionment claim is similarly precluded. California law generally allows for apportionment of tort liability among individual tortfeasors in proportion to their respective degrees of fault. Amer. Motorcycle Ass'n v. Superior Ct., 578 P.2d 899, 912 (Cal. 1978). However, this rule of apportionment is grounded in the principle of equitable indemnity. Id. ("[W]e conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis."); see also Prince v. Pacific Gas & Elec. Co., 202 P.3d 1115, 1120 (Cal. 2009) ("Although traditional equitable indemnity once operated to shift the entire loss upon the one bound to indemnify, the doctrine is now subject to allocation of fault principles and comparative equitable apportionment of loss."). In California, therefore, a "claim" for apportionment is in actuality a claim for equitable indemnity that allows the plaintiff to seek apportionment of damages.[4]

---

[4] See also Great Western Drywall, Inc. v. Interstate Fire & Cas. Co., 74 Cal. Rptr. 3d 657, 663 (Cal. Ct. App. 2008) ("Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be equitable *sharing* of loss between multiple tortfeasors. . . . It is an extension of the comparative fault doctrine which allowed loss to be apportioned between plaintiff and defendants

Further, in California, the presence of an express contractual indemnity clause forecloses a claim for equitable indemnity. <u>Rossmoor Sanitation, Inc. v. Pylon, Inc.</u>, 532 P.2d 97, 100 (Cal. 1975) ("Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity."); <u>Md. Cas. Co. v. Bailey & Sons, Inc.</u>, 41 Cal. Rptr. 2d 519, 524 (Cal. Ct. App. 1995). The Court has found that American Family is entitled to indemnity from Copart pursuant to an express indemnity clause in the parties' contract. Therefore, American Family may not also maintain a claim for apportionment. Summary judgment is granted in favor of Copart on this claim.

## V.   CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant American Family Mutual Insurance Company's Motion for Summary Judgment on Plaintiffs' Claims (ECF No. 56) is GRANTED IN PART and DENIED IN PART, as follows:

- Summary judgment is denied as to Plaintiffs' First Cause of Action (Negligence).
- Summary judgment is granted in favor of American Family as to Plaintiffs' Second Cause of Action (Breach of Implied Covenant of Good Faith and Fair Dealing).
- Summary judgment is granted in favor of American Family as to Plaintiffs' Third Cause of Action (Breach of Contract).
- Summary judgment is granted in favor of American Family as to Plaintiffs' Fourth Cause of Action (Breach of Statutes Governing Unfair Claims Settlement and Practices).

**IT IS FURTHER ORDERED** that Third Party Defendant Copart, Inc.'s Motion for Summary Judgment (ECF No. 48) is GRANTED IN PART and DENIED IN PART, and Third-Party Plaintiff American Family Mutual Insurance Company's Counter Motion for Summary

according to their respective responsibility for the loss. Comparative equitable indemnity includes the entire range of possible apportionments . . . .") (emphasis in original) (citations and internal quotation marks omitted).

Judgment (ECF No. 55) is also GRANTED IN PART and DENIED IN PART, as follows:

- Summary judgment is granted in favor of American Family as to its First Claim for Relief (Breach of Contract).
- Summary judgment is granted in favor of American Family as to its Second Claim for Relief (Negligent Bailment).
- Summary judgment is granted in favor of American Family as to its Third Claim for Relief (Express Indemnity).
- Summary judgment is granted in favor of Copart as to American Family's Fourth Claim for Relief (Implied Indemnity).
- Summary judgment is granted in favor of Copart as to American Family's Fifth Claim for Relief (Contribution).
- Summary judgment is granted in favor of Copart as to American Family's Sixth Claim for Relief (Apportionment).

DATED: September 29, 2015.

_____

**RICHARD F. BOULWARE, II**
**United States District Judge**